**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF WASHINGTON**

| | |
|---|---|
| MATTHIAS JENß, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>AVISTA CORPORATION, ERIK J. ANDERSON, KRISTIANNE BLAKE, DON BURKE, REBECCA A. KLEIN, SCOTT H. MAW, SCOTT MORRIS, MARC RACICOT, HEIDI B. STANLEY, R. JOHN TAYLOR, and JANET WIDMANN,<br><br>Defendants. | Case No. 2:17-cv-333<br><br>**CLASS ACTION**<br><br>**CLASS ACTION COMPLAINT FOR VIOLATION OF SECTIONS 14(a) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Matthias Jenß ("Plaintiff"), by his attorneys, alleges upon information and belief, except for his own acts, which are alleged on knowledge, as follows:

**INTRODUCTION**

1. Plaintiff brings this action on behalf of himself and the public stockholders of Avista Corporation ("Avista" or the "Company") against Avista and Avista's Board of Directors (the "Board" or the "Individual Defendants," as further defined below, and together with the Company, "Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rule 14a-9 promulgated thereunder, 17 C.F.R. § 240.14a-9. Specifically, Defendants solicit shareholder votes in connection with an attempt to sell the Company to Hydro One Limited ("Hydro One" or "Parent") through a proxy statement that omits material facts necessary to make the statements therein not false or misleading. Unless these disclosure deficiencies are cured, the

COMPLAINT - 1

Company's stockholders will be forced to decide whether to vote their shares in favor of the Proposed Transaction (defined below) based upon a materially incomplete and misleading proxy statement.

2. On July 19, 2017, Avista and Hydro One issued a joint press release announcing that they had entered into a definitive merger agreement (the "Merger Agreement"), under which Olympus Holding Corp. ("US Parent"), an indirect, wholly owned subsidiary of Hydro One, and Olympus Corp., an indirect, wholly owned subsidiary of Hydro One ("Merger Sub"), would acquire all of Avista's outstanding stock for $53.00 per share in cash (the "Merger Consideration"). The transaction between Avista and Hydro One (the "Proposed Transaction") has a total value of approximately $5.3 billion.

3. On September 14, 2017, Defendants issued materially incomplete and misleading disclosures in the Form PREM14A Preliminary Proxy Statement (the "Proxy") filed with the SEC in connection with the Proposed Transaction.

4. The Proxy is deficient and misleading because, *inter alia*, it omits material information concerning the financial analyses conducted by Merrill Lynch, Pierce, Fenner & Smith Incorporated ("BofA Merrill Lynch"), the Company's financial advisor. Without all material information, Avista stockholders cannot make a properly informed decision regarding whether to vote in favor of the Proposed Transaction.

5. By unanimously authorizing the issuance of the Proxy, the Individual Defendants participated in the solicitation even though they knew, or should have known, that the Proxy was materially false and/or misleading.

6. The failure to adequately disclose such material information constitutes a violation of Sections 14(a) and 20(a) of the Exchange Act, and SEC Rule 14a-9 promulgated thereunder, as stockholders need such information in order to make a fully-informed decision in determining how to vote on the Proposed Transaction. For these reasons, and as set forth in greater detail herein, Plaintiff seeks to enjoin the Defendants from conducting the stockholder vote on the Proposed Transaction unless and until the material information discussed below is disclosed to Avista's stockholders or, in the event the Proposed Transaction is consummated, to recover damages resulting from Defendants'

violations of federal securities laws and regulations. Judicial intervention is warranted here to rectify existing and future irreparable harm to the Company's stockholders.

## JURISDICTION AND VENUE

7. This Court has subject matter jurisdiction under 28 U.S.C. § 1331 (federal question jurisdiction) and Section 27 of the Exchange Act (15 U.S.C. § 78aa) because Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9.

8. The Court has personal jurisdiction over each Defendant because each either conducts business in and maintains operations in this District or is an individual who either is present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

9. Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because: (a) Avista is incorporated in this District; (b) the conduct at issue took place and had an effect in this District; (c) a substantial portion of the corporate transactions and wrongs complained of herein occurred here; and (d) Defendants have received substantial compensation and other transfers of money here by doing business here and engaging in activities having an effect in this District.

## PARTIES

10. Plaintiff is, and has been at all relevant times, the owner of shares of ordinary stock of Avista.

11. Avista is a corporation organized and existing under the laws of the State of Washington. It maintains principle place of business at 1411 East Mission Avenue, Spokane, Washington 99202-2600. Avista's common stock trades on the NYSE under the ticker symbol "AVA."

12. Defendant Erik J. Anderson ("Anderson") has served as a director of the Company since November 2000.

13. Defendant Kristianne Blake ("Blake") has served as a director of the Company since July 2000.

COMPLAINT - 3

14. Defendant Don Burke ("Burke") has served as a director of the Company since August 2011.

15. Defendant Rebecca A. Klein ("Klein") has served as director of the Company since May 2010.

16. Defendant Scott H. Maw ("Maw") has served as a director of the Company since August 2016.

17. Defendant Scott Morris ("Morris") is the Chairman of the Board and Chief Executive Officer ("CEO") of the Company, and has served as a director of the Company since February 2007.

18. Defendant Marc Racicot ("Racicot") has served as a director of the Company since August 2009.

19. Defendant Heidi B. Stanley ("Stanley") has served as a director of the Company since May 2006.

20. Defendant R. John Taylor ("Taylor") has served as a director of the Company since May 1985.

21. Defendant Janet Widmann ("Widmann") has served as a director of the Company since August 2014.

22. Defendants Anderson, Blake, Burke, Klein, Maw, Morris, Racicot, Stanley, Taylor, and Widmann are collectively referred to as "Individual Defendants" and/or the "Board."

23. Relevant non-party Hydro One is a corporation organized and existing under the laws of the Province of Ontario.

24. Relevant non-party US Parent, is a newly formed Delaware corporation that is an indirect, wholly owned subsidiary of Hydro One.

25. Relevant non-party Merger Sub, is a newly formed Washington corporation that is an indirect, wholly owned subsidiary of Hydro One.

**CLASS ACTION ALLEGATIONS**

26. Plaintiff brings this action individually and as a class action on behalf of all holders of Avista common stock who are being, and will be, harmed by Defendants' actions described herein (the "Class"). Excluded from the Class are Defendants herein and any person, firm, trust,

COMPLAINT - 4

corporation, or other entity related to, controlled by, or affiliated with, any Defendant, including the immediate family members of the Individual Defendants.

27. This action is properly maintainable as a class action under the Federal Rule of Civil Procedure 23.

28. The Class is so numerous that joinder of all members is impracticable. According to the Proxy, as of July 18, 2017, Avista had 64,411,244 shares of common stock outstanding. While the exact number of Class members is presently unknown to Plaintiff and can only be ascertained through discovery, Plaintiff believes that there are thousands of members in this Class. All members of the Class may be identified from records maintained by Avista or its transfer agent and may be notified of the pendency of this action by mail, using forms of notice similar to that customarily used in securities class actions.

29. There are questions of law and fact which are common to the Class and which predominate over questions affecting any individual Class member. The common questions include, *inter alia*, the following: (i) whether Defendants solicited stockholder approval of the Proposed Transaction through a materially false or misleading Proxy in violation of federal securities laws; (ii) whether Plaintiff and other Class members will suffer irreparable harm if such securities laws violations are not remedied before the vote on the Proposed Transaction; and (iii) whether the Class is entitled to injunctive relief as a result of Defendants' wrongful conduct as alleged herein.

30. Plaintiff's claims are typical of the claims of the other members of the Class and Plaintiff does not have any interests adverse to the Class. Plaintiff and the other members of the Class have sustained damages as a result of Defendants' wrongful conduct as alleged herein.

31. Plaintiff will fairly and adequately protect the interests of the Class and has retained competent counsel experienced in litigation of this nature.

32. The prosecution of separate actions by individual members of the Class creates a risk of inconsistent or varying adjudications with respect to individual members of the Class, which could establish incompatible standards of conduct for Defendants.

33. Plaintiff anticipates that there will be no difficulty in the management of this litigation. A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

34. Defendants have acted on grounds generally applicable to the Class with respect to the matters complained of herein, thereby making appropriate the relief sought herein with respect to the Class as a whole.

35. Accordingly, Plaintiff seeks injunctive and other equitable relief on behalf of himself and the Class to prevent the irreparable injury that the Company's stockholders will continue to suffer absent judicial intervention.

## FURTHER SUBSTANTIVE ALLEGATIONS

*Company Background and the Proposed Transaction*

36. Avista is primarily, an electric and natural gas utility. Avista provides utility operations in the Pacific Northwest and Juneau, Alaska. Avista's utility division in the Pacific Northwest provides electric service to 379,000 customers and natural gas to 342,000 customers. In addition to its utility services, Avista has other businesses, including venture fund investments, sheet metal fabrication, and real estate investments.

37. On July 19, 2017, Avista and Hydro One executed the Merger Agreement and issued a joint press releasing announcing the parties' entry into the transaction, which in relevant part stated:

> TORONTO, ONTARIO and SPOKANE, WASHINGTON –
> (Marketwired) -- 07/19/17 --
>
> Hydro One Limited ("Hydro One") (TSX:H) and Avista Corporation ("Avista") (NYSE:AVA) today jointly announced a definitive merger agreement ("Agreement") under which Hydro One will acquire Avista for C$67 (US$53) per share in a C$6.7 billion (US$5.3 billion) all-cash transaction. Together, Hydro One and Avista will create a North American leader in regulated electricity and natural gas business with over C$32.2 billion (US$25.4 billion) in combined assets. The transaction brings together two industry-leading regulated utilities with over 230 years of collective operational experience as well as shared corporate cultures and values. The combined entity will safely and reliably serve more than two million retail and industrial customers and hold assets throughout North America including Ontario, Washington, Oregon, Idaho, Montana and Alaska.
>
> "This marks a proud moment for Canadian champions as we grow our business into a North American leader," said Mayo Schmidt, President and CEO, Hydro One Limited. "This transaction demonstrates the power and value of the transition into an investor-owned utility, by allowing for healthy expansion into new lines of

regulated utility business and new jurisdictions, such as the U.S. Pacific Northwest which is experiencing customer and economic growth."

"With a focus on operational excellence and building our earnings streams, we are positioned for long-term, sustainable growth," said Schmidt. "We are further accomplishing this goal by bringing together two companies with shared cultures and industry expertise to create a North American regulated utility leader. This combination means greater scale, diversity and financial flexibility."

Hydro One has a uniquely strong track record consolidating electricity utilities. Since the IPO, Hydro One has also delivered on cost savings and efficiencies for shareholders and customers. Through the company's energy conservation programs, Hydro One has helped customers and municipalities save 700 GWh year-to-date.

"Since our initial public offering, we have significantly enhanced our current operations while exploring opportunities that extend and diversify our regulated assets," said Schmidt. "We constantly seek to deliver exceptional value to shareholders, customers, and the communities we serve through stable, increasing regulated returns, exceptional service, and community engagement."

This strategic combination demonstrates the value of consolidation by bringing together two highly complementary platforms to create one of North America's largest regulated utilities, meaningfully enhancing both shareholder and customer value. In addition, over time, non-headcount efficiencies will be realized through collaboration and sharing of best practices on IT, innovation and supply chain purchasing, all of which will further enhance cost savings. No workforce reductions are anticipated as a result of this transaction for either Avista or Hydro One.

Avista Corporation Chairman, President and CEO Scott Morris said, "For Avista, the decision to team up with Hydro One at a time of strength and growth represents a win for our customers, employees, shareholders and the communities we serve. Through this agreement, we have a unique opportunity to secure a partnership that allows us to continue to define and control, to a significant degree, future operations and opportunities in a consolidating industry landscape for the benefit of our customers. In Hydro One, we believe we've found a partner that allows us to preserve our identity and our proud legacy, while also preparing us for the future. We look forward to joining forces with Hydro One and its dynamic team."

Following completion of the transaction, Avista will maintain its existing corporate headquarters in Spokane and will continue to operate as a standalone utility in Washington, Oregon, Idaho, Montana and Alaska. Its management team and employees will remain in place and it will operate with its own Board of Directors representing the interests of the Pacific Northwest and the communities it serves. The combined company's headquarters will be based in Toronto.

Avista employees and retirees will see a continuation of the company essentially as it is today. Customers of both companies will continue to be provided with safe, reliable and high quality energy. Hydro One and Avista customer rates will not be impacted by any of the costs associated with the transaction. The communities Avista serves will continue to benefit from the important philanthropy and economic development that Avista provides.

"In fact," Morris said, "Hydro One is committed to doing even more - nearly doubling Avista's current levels of community support."

COMPLAINT - 7

"This is the coming together of two highly respected and reputable companies steeped in history and shared commitment to the communities they serve. Both teams also share a common vision and a dedication to serving customers safely and reliably every day," said Schmidt.

"The strength of the combined company enables the accelerated deployment of innovation programs and infrastructure upgrades for the benefit of customers while continuing to deliver on shareholder expectations for consistent, healthy, financial performance. Together, we will deliver even more possibilities for the shareholders, customers, employees, and communities we have the privilege of serving," said Schmidt.

The transaction was unanimously approved by the Boards of Directors of both companies and is expected to close in the second half of 2018, subject to Avista common shareholder approval and certain regulatory and government approvals and clearances, including approval by the Washington Utilities and Transportation Commission, the Public Utility Commission of Oregon, the Idaho Public Utilities Commission, the Regulatory Commission of Alaska, the Public Service Commission of the State of Montana, the U.S. Federal Energy Regulatory Commission, clearance by the Committee on Foreign Investment in the United States and compliance with applicable requirements under the U.S. Hart-Scott-Rodino Antitrust Improvements Act of 1976, as amended, and the satisfaction of customary closing conditions

*BofA Merrill Lynch's Financial Analyses and Avista's Financial Projections*

38.     On December 1, 2017, Avista engaged with BofA Merrill Lynch to serve as its financial advisor in connection with exploring potential strategic alternatives. Over the following months, BofA Merrill Lynch assisted the Company and the Board with analyses of potential strategic alternatives, outreach and communications with parties interested in a potential transaction with the company, and discussions with Hydro One and its financial advisor.

39.     On February 2-3, 2017, the Board, Company management and BofA Merrill Lynch discussed the current status of and future outlook on the utility sector, Avista's market position, and a preliminary financial analysis of Avista on a stand-alone basis that was prepared by BofA Merrill Lynch and based on management's 2017 five-year financial projections.

40.     After discussions with Hydro One had been underway, on June 2, 2017, at the direction of Avista, BofA Merrill Lynch sent Hydro One's financial advisor Avista's five-year financial forecast, which was prepared by Company management.

41.     On July 17, 2017, the Board met to discuss the status of the merger agreement drafts Hydro One and Avista had been exchanging. During this meeting, BofA Merrill Lynch reviewed the financial aspects of the proposed transaction, various methodologies it used in its financial analysis,

COMPLAINT - 8

and the terms of certain other potential counterparties that had previously expressed interest in a potential strategic transaction with Avista.

42. On July 19, 2017, the Board held a telephonic special meeting during which BofA Merrill Lynch delivered its oral opinion as to the fairness of the Proposed Transaction. The fairness opinion was confirmed by delivery of a written opinion the same day.

43. BofA Merrill Lynch's fairness opinion stated that the merger consideration to be received pursuant to the Proposed Transaction by Avista common stockholders was fair, from a financial point of view, to such holders.

44. In rendering this opinion as to the fairness of the Proposed Transaction, BofA Merrill Lynch:

(i) reviewed publicly available business and financial information regarding Avista;

(ii) reviewed internal financial and operating information regarding Avista concerning its business, operations and prospects that Company management furnished to or discussed with BofA Merrill Lynch, including financial forecasts;

(iii) held discussions with Company management;

(iv) reviewed Avista's historical stock trading prices;

(v) compared such information with similar information on other companies;

(vi) compared the merger's financial terms to publicly available information concerning the terms of other transactions;

(vii) reviewed a draft of the merger agreement dated July 19, 2017; and

(viii) performed other studies and analyses BofA Merrill Lynch deemed relevant.

45. The primary analyses BofA Merrill Lynch conducted in the rendering of its fairness opinion were the: *Selected Publicly Traded Companies Analysis, Discounted Cash Flow Analysis,* and *Selected Precedent Transactions Analysis*. Each of these analyses used financial projections provided to BofA Merrill Lynch by Company management.

*The Proxy Misleads Avista Stockholders by Omitting Material Information*

46.     On September 14, 2017, Avista filed a materially misleading Proxy with the SEC. The Proxy is rendered materially misleading by the omission of critical information concerning: (i) BofA Merrill Lynch's financial analyses conducted in preparing its fairness opinion; and (ii) Avista's financial projections. As such, the Proxy, which recommends that the Company's stockholders vote their shares in support of the Proposed Transaction, misrepresents and/or omits material information in violation of Sections 14(a) and 20(a) of the Exchange Act.

*BofA Merrill Lynch's Financial Analysis*

47.     The Proxy describes BofA Merrill Lynch's fairness opinion and the various valuation analyses it performed in support of its opinion. However, the description of BofA Merrill Lynch's fairness opinion and analyses fails to include key inputs and assumptions underlying these analyses. Without this information, as described below, Avista's public stockholders are unable to fully understand these analyses and, thus, are unable to determine what weight, if any, to place on BofA Merrill Lynch's fairness opinion in determining whether or not to vote in favor of the Proposed Transaction. This omitted information, if disclosed, would significantly alter the total mix of information available to Avista's stockholders.

48.     With respect to BofA Merrill Lynch's *Selected Publicly Traded Companies Analysis*, the Proxy omits the individual multiples and financial metrics for the companies observed by BofA Merrill Lynch in its analysis.

49.     With respect to BofA Merrill Lynch's *Selected Precedent Transactions Analysis*, the Proxy omits the individual multiples for each of the comparable transactions. The disclosure of such multiples is necessary because they are a crucial element of these analyses, as the analysis is based on comparison and relative value. Without such disclosure, stockholders are unable to determine whether the range of multiples selected by BofA Merrill Lynch reflects appropriately comparable transactions to the Proposed Transaction.

*Misleading Statements and Omissions Regarding the Company's Financial Projections*

50.     The Proxy fails to disclose material information concerning the Company's financial projections which were utilized by BofA Merrill Lynch in performing the analyses underpinning its fairness opinion.

51.     Specifically, the Proxy fails to disclose estimated EBITDA for years 2018, 2019, and 2021 as used in BofA Merrill Lynch's *Discounted Flow Analysis*, *Selected Publicly Traded Companies Analysis*, and *Selected Precedent Transaction Analysis*. Given such projections were used in BofA Merrill Lynch's fairness opinion, the Avista should disclose estimated EBITDA and further reconcile such non-GAAP measure to its most comparable GAAP equivalent and/or provide the line items necessary to calculate estimated EBITDA.

52.     Similarly, the Proxy fails to disclose standalone unlevered, after-tax free cash flows for Avista's fiscal years from the second half of 2017 through 2021 as referenced and used in BofA Merrill Lynch's *Discounted Flow Analysis*. Further, the Proxy fails to reconcile such measure to the most comparable GAAP measure or otherwise disclose the line-items necessary to calculate standalone unlevered, after-tax free cash flows.

53.     Additionally, the Proxy discloses a non-GAAP measure, *Utility Gross Margin by Business Segment*. However, providing this non-GAAP measure without disclosing all line item metrics used to calculate it, or otherwise reconciling the non-GAAP projection to the most comparable GAAP equivalent, makes the provided disclosures materially incomplete and misleading.

54.     Non-GAAP measures have no universally understood definition and vary widely between companies depending on the needs of management in promoting their own effect on Company performance. Without these measures, cherry-picking the disclosed projections materially misleads Avista's stockholders and renders BofA Merrill Lynch's financial analysis materially incomplete and misleading.

55.     Because of the non-standardized and potentially manipulative nature of non-GAAP measures, when a company discloses information in a proxy statement that includes non-GAAP financial measures, the Company must also disclose comparable GAAP measures and a quantitative reconciliation of forward-looking information pursuant to Regulation G. 17 C.F.R. § 244.100.

COMPLAINT - 11

56. Indeed, the SEC has repeatedly emphasized that disclosure of non-GAAP projections can be inherently misleading, and has therefore heightened its scrutiny of the use of such projections. *See, e.g.*, Nicolas Grabar and Sandra Flow, *Non-GAAP Financial Measures: The SEC's Evolving Views*, Harvard Law School Forum on Corporate Governance and Financial Regulation (June 24, 2016), https://corpgov.law.harvard.edu/2016/06/24/non-gaap-financial-measures-the-secs-evolving-views/; Gretchen Morgenson, *Fantasy Math Is Helping Companies Spin Losses Into Profits*, N.Y. Times, Apr. 22, 2016, http://www.nytimes.com/2016/04/24/business/fantasy-math-is-helping-companies-spin-losses-into-profits.html?_r=0. In fact, on May 17, 2016, the SEC's Division of Corporation Finance released new and updated Compliance and Disclosure Interpretations ("C&DIs") on the use of non-GAAP financial metrics that demonstrate the SEC is indeed tightening policy. *Non-GAAP Financial Measures, Compliance & Disclosure Interpretations*, SEC (May 17, 2016), https://www.sec.gov/divisions/corpfin/guidance/nongaapinterp.htm. One of the new C&DIs regarding forward-looking information, such as financial projections, explicitly requires companies to provide *any* reconciling metrics that are available without unreasonable efforts.

57. Thus, the above-referenced line-item projections that have been omitted from the Proxy are precisely the types of "reconciling metrics" that the SEC has recently indicated should be disclosed to render non-GAAP financial projections not misleading to shareholders.

58. Defendants' failure to provide Avista's stockholders with the foregoing material information renders the financial projections and analyses depicted in the Proxy materially incomplete and misleading, and constitutes a violation of Sections 14(a) and 20(a) of the Exchange Act, and Rule 14a-9 promulgated thereunder.

## **CLAIMS FOR RELIEF**

## **COUNT I**

**Claim for Violation of Section 14(a) of the 1934 Act, and SEC Rule 14a-9 Promulgated Thereunder, Against the Individual Defendants and Avista**

59. Plaintiff repeats and re-alleges the preceding allegations as if fully set forth herein.

60. The Individual Defendants disseminated the false and misleading Proxy, which contained statements that, in violation of Section 14(a) of the Exchange Act and SEC Rule 14a-9, in

COMPLAINT - 12

light of the circumstances under which they were made, omitted to state material facts necessary to make the statements therein not materially false or misleading. Avista is liable as the issuer of these statements.

61.   The Proxy was prepared, reviewed, and/or disseminated by the Individual Defendants. By virtue of their positions within the Company, the Individual Defendants were aware of this information and their duty to disclose this information in the Proxy.

62.   The omissions and misstatements in the Proxy are material in that a reasonable stockholder will consider them important in deciding how to vote on the Proposed Transaction. In addition, a reasonable investor will view a full and accurate disclosure as significantly altering the total mix of information made available in the Proxy and in other information reasonably available to stockholders.

63.   The Individual Defendants were aware of their duty to disclose this information, and yet omitted such at least recklessly or negligently. The material information described above that was omitted from the Proxy takes on actual significance in the minds of Avista's stockholders in reaching their decision whether to vote in favor of the Proposed Transaction. Absent disclosure of this material information prior to the vote on the Proposed Transaction, Plaintiff and the other members of the Class will be unable to make an informed decision about whether to vote in favor of the Proposed Transaction and are thus threatened with irreparable harm for which damages are not an adequate remedy

64.   The Proxy is an essential link in causing Plaintiff and the Company's stockholders to approve the Proposed Transaction.

65.   By reason of the foregoing, Defendants violated Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder.

66.   Because of the false and misleading statements in the Proxy, Plaintiff and the Class are threatened with irreparable harm. Accordingly, Plaintiff seeks injunctive and other equitable relief to prevent the irreparable injury that Company stockholders will continue to suffer absent judicial intervention.

# COUNT II

### Claim for Violation of Section 20(a) of the 1934 Act

### Against the Individual Defendants

67. Plaintiff repeats and re-alleges the preceding allegations as if fully set forth herein.

68. The Individual Defendants acted as controlling persons of Avista within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of Avista and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are false and misleading.

69. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

70. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and therefore, is presumed to have had the power to control and influence the particular transactions giving rise to the violations as alleged herein, and exercised the same. The Proxy contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction. They were thus directly involved in the making of the Proxy.

71. By virtue of the foregoing, the Individual Defendants violated Section 20(a) of the Exchange Act.

72. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) of the Exchange Act and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Defendants' conduct, Plaintiff and the Class are threatened with irreparable harm.

COMPLAINT - 14

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A. Declaring that this action is properly maintainable as a class action and certifying Plaintiff as the Class representative and his counsel as Class counsel;

B. Preliminarily and permanently enjoining Defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

C. In the event Defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding Plaintiff and the Class rescissory damages;

D. Directing the Individual Defendants to disseminate a Proxy that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

E. Declaring that Defendants violated Sections 14(a) and/or 20(a) of the Exchange Act, as well as Rule 14a-9 promulgated thereunder;

F. Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

G. Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff respectfully requests a trial by jury on all issues so triable.

Dated: September 25, 2017

By: s/ Roger M. Townsend
Roger M. Townsend, WSBA No. 25525
BRESKIN JOHNSON & TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, WA 98104
Telephone: (206) 652-8660 Facsimile: (206) 652-8290
Email: rtownsend@bjtlegal.com

**OF COUNSEL**
**LEVI & KORSINSKY LLP**
Donald J. Enright
Elizabeth K. Tripodi
1101 30th Street, N.W., Suite 115
Washington, DC 20007
Telephone: (202) 524-4290 Facsimile: (202) 337-1567
*Counsel for Plaintiff*

COMPLAINT - 15